## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TRISTRATA TECHNOLOGY, INC.            )
                                      )
            Plaintiff,                )
                                      )
      v.                              )      Civil Action No.  01-127-JJF
                                      )
MARY KAY, INCORPORATED,               )
                                      )
            Defendant.                )

## FINAL JURY INSTRUCTIONS

## TABLE OF CONTENTS

**Page**

FINAL JURY INSTRUCTION NO. 1.1
Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FINAL JURY INSTRUCTION NO. 1.2
Juror's Duties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

FINAL JURY INSTRUCTION NO. 1.3
Burdens of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

FINAL JURY INSTRUCTION NO. 2
Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

FINAL JURY INSTRUCTION NO. 2.1
Patent Claims - Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

FINAL JURY INSTRUCTION NO. 2.2
Independent and Dependent Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

FINAL JURY INSTRUCTION NO. 2.3
The Court Determines What Patent Claims Mean . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

FINAL JURY INSTRUCTION NO. 2.4
Open Ended or Comprising Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

FINAL JURY INSTRUCTION NO. 2.5
Other Patents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

FINAL JURY INSTRUCTION NO. 2.6
Patent Infringement – Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

FINAL JURY INSTRUCTION NO. 2.7
Direct Patent Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

FINAL JURY INSTRUCTION NO. 2.8
Indirect Infringement – Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

FINAL JURY INSTRUCTION NO. 2.9
Inducing Patent Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

i

FINAL JURY INSTRUCTION NO. 2.10
    Contributory Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

FINAL JURY INSTRUCTION NO. 2.11
    Willful Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

FINAL JURY INSTRUCTION NO. 3
    Validity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

FINAL JURY INSTRUCTION NO. 3.1
    Presumption of Validity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

FINAL JURY INSTRUCTION NO. 3.2
    Enablement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

FINAL JURY INSTRUCTION NO. 3.3
    Anticipation - Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

FINAL JURY INSTRUCTION NO. 3.4
    Date of Invention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

FINAL JURY INSTRUCTION NO. 3.5
    Prior Art Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

FINAL JURY INSTRUCTION NO. 3.6
    Prior Public Knowledge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

FINAL JURY INSTRUCTION NO. 3.7
    Prior Public Use . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

FINAL JURY INSTRUCTION NO. 3.8
    Prior Publication . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

FINAL JURY INSTRUCTION NO. 3.9
    Obviousness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

FINAL JURY INSTRUCTION NO. 3.10
    Scope and Content of the Prior Art . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

FINAL JURY INSTRUCTION NO. 3.11
    Differences Over the Prior Art . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

FINAL JURY INSTRUCTION NO. 3.12
    Level of Ordinary Skill . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

FINAL JURY INSTRUCTION NO. 3.13
Motivation to Combine ................................................... 34

FINAL JURY INSTRUCTION NO. 3.14
Obviousness - Hindsight ................................................. 35

FINAL JURY INSTRUCTION NO. 3.15
Objective Criteria Concerning Obviousness ................................. 36

FINAL JURY INSTRUCTION NO. 3.16
Obvious to Try ......................................................... 37

FINAL JURY INSTRUCTION NO. 4
Damages - Generally .................................................... 39

FINAL JURY INSTRUCTION NO. 4.1
Compensatory Damages in General ........................................ 40

FINAL JURY INSTRUCTION NO. 4.2
Burden of Proof ........................................................ 41

FINAL JURY INSTRUCTION NO. 4.3
Entire Market Value Rule ................................................ 42

FINAL JURY INSTRUCTION NO. 4.4
Date Damages May Begin ................................................ 43

FINAL JURY INSTRUCTION NO. 4.5
Reasonable Royalty as a Measure of Damages ............................... 44

FINAL JURY INSTRUCTION NO. 4.6
Factors for Determining Reasonable Royalty ................................ 45

FINAL JURY INSTRUCTION NO. 4.7
Interest ............................................................... 47

FINAL JURY INSTRUCTION NO. 4.8
Closing Statement Damages .............................................. 48

FINAL JURY INSTRUCTION NO. 5
Deliberations and Verdict - Introduction ................................... 49

FINAL JURY INSTRUCTION NO. 5.1
Unanimous Verdict . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

FINAL JURY INSTRUCTION NO. 5.2
Duty to Deliberate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

FINAL JURY INSTRUCTION NO. 5.3
Court Has No Opinion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

## FINAL JURY INSTRUCTION NO. 1.1
### *Introduction*

Members of the jury, I will now instruct you about the law that you must follow in deciding this case.

I will start by reminding you about your duties as jurors and the instructions you heard at the beginning of the case.

I will then explain the positions of the parties and the law you will apply in this case.

Last, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.

Please listen very carefully to everything I say.

## FINAL JURY INSTRUCTION NO. 1.2
### *Juror's Duties*

Remember your duties as jurors as I explained them to you at the beginning of the case. You must decide what the facts are from the evidence you saw and heard in court. Nothing I have said or will say should influence your view of the facts in any way. Do not guess or speculate, and do not be influenced in any way by any personal feeling of sympathy for, or prejudice against, either side in this case. All parties are entitled to the same fair and impartial consideration.

You must also take the law that I give you and apply it to the facts. You are bound by the oath you just took to follow my instructions, even if you personally disagree with them. This includes the instructions that I gave you when we started and during trial.

All of my instructions are important, and you should consider them together as a whole. I will not repeat my earlier instructions about evidence and how to weigh and consider it. You have copies of these instructions, however, and you should refer to them as you feel necessary.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

2

## FINAL JURY INSTRUCTION NO. 1.3
### *Burdens of Proof*

Plaintiff, Tristrata, has the burden to prove its claims of patent infringement and its claims of damages by a preponderance of the evidence. That means Tristrata must produce evidence that, when considered in light of all of the facts, leads you to believe that what Tristrata claims is more likely true than not. To put it differently, if you were to put Tristrata's and Mary Kay's evidence on opposite sides of a scale, the evidence supporting Tristrata's claims would have to make the scales tip somewhat on its side.

Mary Kay has the burden to prove its claim of invalidity that the method claims of the patents asserted against Mary Kay are not valid by clear and convincing evidence. In addition, Tristrata must prove its claim that Mary Kay willfully infringed by clear and convincing evidence and not the preponderance of the evidence standard that applies to Tristrata's other claims in this case. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.

Finally, keep in mind that the standard of "proof beyond a reasonable doubt" does not play any part in this case and you should, therefore, not consider it at all in your deliberations.

3

## FINAL JURY INSTRUCTION NO. 2
### *Infringement*

Plaintiff, Tristrata, alleges that Defendant, Mary Kay, infringes certain claims of the '171, '370 and '988 patents. If any person or entity makes, uses, sells, offers to sell or imports what is covered by a patent claim without the patent owner's permission, that person is said to infringe the patent. In addition, any person or entity that induces or contributes to another's infringement is also liable for patent infringement.

I will now instruct you on the specific rules you must follow in deciding whether Tristrata has proven that use of Mary Kay's products has infringed one or more of the method claims of the Tristrata patents.

4

**FINAL JURY INSTRUCTION NO. 2.1**
*Patent Claims - Generally*

To decide whether Mary Kay has infringed Tristrata's patents, you will have to understand the patent "claims." The claims of a patent are the numbered sentences at the end of a patent. The claims describe the invention made by the inventor. This is what the patent owner owns and what the patent owner may prevent others from making, using or selling. Claims may describe products, such as machines or chemicals, or they may describe methods for making or using a product. Only the claims of the patent can be infringed. A patent also includes drawings and discussion of examples of the invention. Neither the drawings of a patent nor other portions of the patent can be infringed. You should not compare Mary Kay's commercial products with any specific example set out in the '171, '370 or '988 patents or with any product sold by Tristrata. Rather, you must only compare use of Mary Kay's commercial product with the method *claims* of the '171, '370 and '988 patents when making your decision regarding infringement.

Each claim of a patent represents separate patent protection given to a patent owner, and you must individually consider each of the patent claims involved in this case. The law does not require infringement of all the claims in a patent. There is infringement and entitlement to damages if a single claim of the patent has been infringed.

5

## FINAL JURY INSTRUCTION NO. 2.2
### *Independent and Dependent Claims*

Claims are typically divided into parts called limitations. For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim.

There are two types of patent claims: independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. In simple terms, an independent claim stands on its own two feet. An independent claim is read alone to determine the limitations that must exist to infringe the claim. Claim 9 of the '171 patent, for example, is an independent claim.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes all of the limitations in the claims to which it refers. Therefore, to determine what a dependent claim covers, you must look at both the dependent claim and the claim or claims to which it refers.

For example, claim 10 is a dependent claim. It refers to claim 9. For a method to infringe a dependent claim 10, the method must have all the limitations of both claim 9 and claim 10. Therefore, if you find that an independent claim is not infringed, you must also find that all claims depending on that claim are not infringed.

6

**FINAL JURY INSTRUCTION NO. 2.3**
*The Court Determines What Patent Claims Mean*

It is the Court's duty under the law to define what the patent claims mean. I have made my determinations and I will now instruct you on the meaning of each claim. You must use the meaning that I give you for each patent claim to decide if the claim is infringed or invalid.

It may be helpful to refer to the copy of the '171, '370 and '988 patents that you have been given as I discuss the claims at issue here. The claims of the '171 patent are toward the end, starting in column 34, line 27; the claims of the '370 patent start in column 20, line 52; and the claims of the '988 patent start in column 17, line 27. I will give you a list of the asserted claims of the '171, '370 and '988 patents as part of the verdict form when I conclude my instructions.

I have defined certain terms of the '171, '370 and '988 patents as follows:

The term "wrinkle" means "a ridge or furrow in the skin associated with degenerative changes in the dermis."

The term "skin changes associated with aging" means "skin changes selected from the group consisting of wrinkles, thinning of the skin, deepening of skin lines, yellowish skin, loss of elasticity, loss of recoilability, and loss of collagen."

The term "topically applying" means "laying on or spreading on said wrinkle or said area of the skin exhibiting a change associated with aging."

The terms "visibly reduce" or "reduce the appearance of" mean "to diminish in size, amount, extent, or number by affecting the dermis, so that such diminution is capable of being perceived."

The terms "in an amount and for a period of time" or "in an effective amount and for a period of time" mean "a quantity of AHA concentration sufficient to visibly reduce said wrinkle or reduce

7

the appearance of said skin change associated with aging that is applied for a period of time sufficient to produce such results."

**FINAL JURY INSTRUCTION NO. 2.4**
*Open Ended or Comprising Claims*

Several of the patent claims at issue in this case use the transitional phrase "a method comprising." For example, the beginning, or preamble, to claim 9 of the '171 patent uses such language. A "method comprising" means "including" or "containing". That is, if you find that the use of Mary Kay's products include all of the limitations in claim 9, the claim is infringed - any additional limitations are irrelevant.

For example, a claim to a table *comprising* the three limitations of a tabletop, legs and glue would be infringed by a table with those limitations and additional parts, such as wheels on the table's legs.

9

## FINAL JURY INSTRUCTION NO. 2.5
### *Other Patents*

The fact that Mary Kay has its own patents does not preclude infringement by Mary Kay of

Tristrata's patents.

**FINAL JURY INSTRUCTION NO. 2.6**
*Patent Infringement – Generally*

A patent owner may enforce his right to stop others from making, using or selling the patented invention by filing a lawsuit for patent infringement.  Patent law provides that any person or business entity which makes, uses or sells, without the patent owner's permission, any product legally protected by at least one claim of a patent within the United States before the patent expires, infringed the patent.

There are three ways to infringe a patent.  One may: (1) directly infringe a patent; (2) induce others to infringe a patent claim, in which case the inducer is liable for infringement as well as the direct infringers; or (3) contribute to the infringement of a patent claim by another by supplying a component specially designed for the patented invention, in which case both the direct infringer and the contributory infringer would be liable for patent infringement.

11

## FINAL JURY INSTRUCTION NO. 2.7
### *Direct Patent Infringement*

Here, Tristrata has sued Mary Kay and has alleged that use of Mary Kay's products directly infringe at least one claim of Tristrata's '171, '370 or '988 patent. I will refer to Mary Kay's products as the accused products.

Deciding whether a claim has been directly infringed is a two-step process. First, the meaning of the patent claim is determined as a matter of law. That job is for the Court, and I have previously told you what the key terms of the asserted claims mean as a matter of law. In the second step, the interpreted claim must be compared to the accused use of the product to determine whether every limitation of the claim can be found in the accused use of the product. The limitation-by-limitation comparison is your responsibility as the jury for this case.

Keep in mind that actual knowledge of a patent, or knowledge that you are infringing a patent, is not necessary, nor is intent to infringe necessary. In short, direct infringement can be established even if the user had a good faith belief that its actions were not infringing any patent and even if the user did not even know of the patent.

12

## FINAL JURY INSTRUCTION NO. 2.8
### *Indirect Infringement – Generally*

As I just mentioned, in addition to stopping infringement by those who are directly infringing, a patent owner also has the right to stop those who are known as "indirect infringers." A holder of a patent that describes a process or method in its claims often must rely on claims of indirect infringement to protect his or her rights. That is, without liability for indirect infringement, a company could manufacture a machine to perform a process described in a patent claim and then sell the machine without fear of recourse by the patent holder.

There are two types of indirect infringers. First, there are those who encourage or induce others to infringe a patent; this is known as "inducing infringement." Second, there are those who contribute to infringement by, for example, supplying them with components used in the patented invention. I will explain to you in a moment the precise requirements for finding someone has induced or contributed to infringement by another person.

In this case, Tristrata accuses Mary Kay of inducing and contributing to the infringement of claims 9, 10, 22, 26 and 27 of the '171 patent; claims 1, 8, 9 and 10 of the '370 patent; and claims 1, 4, 7, 10 and 13 of the '988 patent. It is your job to determine whether Tristrata has proven inducement of or contributory infringement by a preponderance of the evidence. Keep in mind that there can be no indirect infringement unless someone is directly infringing the patent. Thus, to prove that Mary Kay is inducing another person to infringe or contributing to the infringement of another, Tristrata must prove by a preponderance of the evidence that Mary Kay or another person is directly infringing a claim of the patent. To that end, Tristrata asserts that those who actually use the accused Mary Kay products directly infringe the '171, '370 and '988 patents.

13

Such proof may be based on circumstantial evidence you have heard in this case, rather than direct evidence of infringement.

## FINAL JURY INSTRUCTION NO. 2.9
### *Inducing Patent Infringement*

Inducement to infringe requires someone purposefully urging or encouraging another to infringe a patent claim with the intent to cause the acts which constitute infringement - inducement to infringe cannot occur unintentionally.  To be liable for inducement to infringe, the accused inducer must have known of the patent and actively encouraged or instructed another person how to use a product or perform a method in a manner that you, the jury, find infringes the asserted patent claims.  For example, an accused inducer may be liable for inducing infringement if it provided instructions or directions to perform the infringing act through labels, advertising or other materials.

Thus, to prove that Mary Kay induced infringement of the asserted method claims of the '171, '370 or '988 patents, Tristrata must prove by a preponderance of the evidence the following four things:

1.    Mary Kay actively encouraged or instructed another person how to use a product or perform a process in a way you, the jury, finds infringes the method claims of the '171, '370 or '988 patents;

2.    Mary Kay knew of the '171, '370 or '988 patent; and

3.    Mary Kay knew or should have known its actions would induce actual infringement of the method claims; and

4.    the other person directly infringed an asserted method claim of the '171, '370 or '988 patents.

15

All four of these things must be proven by either direct or circumstantial evidence before you may find that Mary Kay induced patent infringement.

## FINAL JURY INSTRUCTION NO. 2.10
### *Contributory Infringement*

A second form of indirect infringement is contributory infringement. Contributory infringement can occur when someone supplies an ingredient that is used to infringe one of the patent claims. The necessary proof to show contributory infringement is focused on the intent of the person supplying the ingredient and the nature of that ingredient. Specifically, to prove contributory infringement by Mary Kay of the '171, '370 or '988 patents, Tristrata must prove by a preponderance of the evidence the following three things:

1.  The ingredient supplied by Mary Kay is a material part of the method claims and is not a staple article or commodity of commerce suitable for substantial non-infringing uses, but rather, the ingredient is especially made or especially adapted for use in an infringement of Tristrata's patent.

2.  Mary Kay knew of the '171, '370 and '988 patents and sold the accused ingredient knowing that the ingredient was especially made or especially adapted for use in an infringement of Tristrata's patent.

3.  Someone then bought the ingredient and actually used it in a way that infringes each limitation of an asserted claim of the '171, '370 and '988 patents.

All three of these things must be proven by direct or circumstantial evidence before you may find that Mary Kay contributed to the patent infringement.

17

## FINAL JURY INSTRUCTION NO. 2.11
### *Willful Infringement*

Tristrata contends that Mary Kay has willfully infringed the '171, '370 and '988 patent claims.

When a person becomes aware that a patent may have relevance to their activities, that person has a duty to exercise due care and investigate whether or not their activities infringe any valid claim of the patent. If that person does not do so and infringes the patent claims, then the infringement is willful. Although, as I explained before, Tristrata must prove infringement of the '171, '370 or '988 patents by a preponderance of the evidence, Tristrata must prove that Mary Kay willfully infringed by the higher burden of clear and convincing evidence.

To establish willful infringement, Tristrata must prove two things with clear and convincing evidence:

1.  Mary Kay was aware of the '171, '370 or '988 patents.

2.  Mary Kay proceeded with its activities without having a reasonable good faith belief that the method claims of the patents were invalid or that the method claims of the patents were not infringed.

Keep in mind that a determination by you that Mary Kay has infringed the patents does not automatically mean that the infringement was willful. As I have explained, the infringement is not willful if Mary Kay had a good faith belief that it did not infringe or that the patents were invalid, and if its belief was reasonable under all the circumstances.

18

## FINAL JURY INSTRUCTION NO. 3
### *Validity*

Mary Kay contends that claims 9, 10, 22, 26 and 27 of the '171 patent; claims 1, 8, 9 and 10 of the '370 patent; and claims 1, 4, 7, 10 and 13 of the '988 patent are invalid for failure to satisfy the statutory requirements of patentability. In particular, Mary Kay contends that the asserted claims are invalid for anticipation, obviousness, and enablement. I will now instruct you on each of these defenses.

19

## FINAL JURY INSTRUCTION NO. 3.1
### *Presumption of Validity*

The granting of a patent by the Patent Office carries with it the presumption that the patent is valid. The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent. Nevertheless, once the validity of a patent has been put in issue, it is the responsibility of the jury to review what the Patent Office has done consistent with these instructions on the law.

This presumption of validity puts the burden of proving invalidity on Mary Kay. While this presumption can be rebutted, the burden is on Mary Kay to do so. This burden requires that Mary Kay prove by clear and convincing evidence that an asserted method claim is invalid. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of the factual contention is highly probable. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

However, if you find that Mary Kay has produced prior art or other evidence not considered by the Patent Office, you can consider whether that art is cumulative of art that was before the Patent Office. The question, then, is whether the prior art produced is more pertinent than that considered by the Patent Office. The presentation at trial by Mary Kay of non-cumulative prior art that was not before the Patent Office allows May Kay to more easily carry its burden of proof as to invalidity even though it does not change the presumption of validity.

20

## FINAL JURY INSTRUCTION NO. 3.2
### *Enablement*

Mary Kay contends the method claims of the '171, '370 and '988 patents are invalid because the patent specification lacked an enabling disclosure.

Patent law requires that the disclosure or written description portion of a patent be sufficiently detailed to enable those skilled in the art to practice the claimed invention. The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to carry out the invention. However, the patent disclosure need not provide information that is within the knowledge of one of ordinary skill in the art or that can be determined with routine testing.

To meet the enablement requirement, the patent disclosure must allow a person of ordinary skill in the art to practice the claimed invention without undue experimentation. Because descriptions in patents are addressed to those skilled in the art to which the invention pertains, an applicant for a patent need not expressly include information that is commonly understood by persons skilled in the art. In other words, the disclosure in the patent must not necessarily describe how to make and use every possible variation of the claimed invention – the person of ordinary skill in the art's knowledge can fill in missing information. Similarly, a patent need not contain a working example so long as the patent discloses enough information to enable a person of ordinary skill in the art to practice the invention. The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that the specification is not enabling. Experimentation or testing that is routine in the industry is permissible. Indeed, a considerable amount of experimentation is permissible, if it is merely routine, or if the specification provides a reasonable amount of guidance with respect to the

21

direction in which the experimentation should proceed.  A specification is enabling so long as the experimentation needed is not undue.

Factors to be considered in determining whether a disclosure would require undue experimentation include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the patent; (3) the presence or absence of working examples in the patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability or unpredictability of the art; and (8) the breadth of the claims.

### FINAL JURY INSTRUCTION NO. 3.3
*Anticipation - Generally*

Mary Kay contends that the invention covered by claims 9, 10, 22, 26 and 27 of the '171 patent; claims 1, 8, 9 and 10 of the '370 patent; and claims 1, 4, 7, 10 and 13 of the '988 patent are invalid because they are not new. A person cannot obtain a patent on an invention if someone else has already made the same invention. If the invention is not new, we say that it was "anticipated" by prior art. Prior art is the legal term used to describe what others had done in the field before the invention was made, and may include things such as articles, books and other patents. It is not necessary that the prior art has been available to every member of the public. It must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.

An invention that is "anticipated" by the prior art is not entitled to patent protection. In order to prove that an invention is "anticipated," Mary Kay must prove by clear and convincing evidence that a single piece of prior art describes or discloses all of the limitations of the claimed invention.

In deciding whether a single item of prior art anticipated a patent claim, you should consider not only what is expressly disclosed or embodied in the particular item of prior art but also what is inherently present. If the prior art necessarily functions in accordance with, or includes, the claimed limitations, it anticipates. If the result is a necessary consequence of what was deliberately intended, it is irrelevant that the prior art article's author did not appreciate the results. However, if the particular prior art item or method was formed only accidentally, or occurred only occasionally or under unusual conditions, it is not an invalidating anticipation.

23

Indeed, performing parts of a prior art method for a different purpose without the patented method being necessarily present does not constitute anticipation.

## FINAL JURY INSTRUCTION NO. 3.4
### *Date of Invention*

Two of the different categories of prior art refer to the date at which the inventors made the invention. This is called the "date of invention."

Under the patent laws, the date of invention is generally the date that the patent application was filed. This is also referred to as a "constructive reduction to practice." In this case, the date is December 23, 1986. Ordinarily, art dated before the application filing date is prior art to the patent claims.

To prove a date of invention earlier than the filing date, Tristrata must show that there was an earlier reduction to practice or an earlier conception followed by a diligent reduction to practice. Conception requires proof that the inventors formed in their minds a definite and permanent idea of the complete and operative invention and that the idea be so clearly defined in the inventors' minds that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation. If Tristrata seeks to show conception through oral testimony of the inventors, it must also produce independent evidence corroborating that testimony. Such evidence is to be evaluated under a rule of reason. To prove actual reduction to practice of a method, an inventor must establish that he actually performed the method and obtained the results. The inventor must also have contemporaneous recognition and appreciation of the invention represented by the claims.

25

## FINAL JURY INSTRUCTION NO. 3.5
### *Prior Art Generally*

A reference must be enabling to be considered prior art. As I stated earlier, enablement

means that the disclosure or written description portion of a patent be sufficiently detailed to

enable those skilled in the art to practice the invention.

26

### FINAL JURY INSTRUCTION NO. 3.6
*Prior Public Knowledge*

Mary Kay contends that the method claims (i.e. claims 9, 10, 22, 26 and 27 of the '171 patent; claims 1, 8, 9 and 10 of the '370 patent; and claims 1, 4, 7, 10 and 13 of the '988 patent) were anticipated because the invention defined in those claims was publicly known or used by others in the United States before the invention thereof by Drs. Yu and Van Scott.

A patent claim is invalid if the invention recited in that claim was publicly known or used by others in the United States before Drs. Yu and Van Scott invented it. If this is true, you must find the '171, '370 and '988 patents invalid.

27

## FINAL JURY INSTRUCTION NO. 3.7
### *Prior Public Use*

Mary Kay contends that the method claims of the patents-at-issue were anticipated because the invention defined in those claims was publicly used by others or the inventors prior to December 23, 1985.

The "public use" of the method defined by the claims, before December 23, 1985 invalidates the patent. An invention is publicly used by another when it is made accessible to any member of the public other than the inventor or a person under an obligation of secrecy imposed by the inventor. Thus, a patent is not invalidated if the particular device, composition or process is used by someone other than the inventor, under circumstances where it is not made accessible to the public.

If the prior public use was an experimental use that was performed to perfect or complete the invention to determine that it will work for its intended purpose, such use will not invalidate the patent.

28

### FINAL JURY INSTRUCTION NO. 3.8
#### *Prior Publication*

Mary Kay contends that the method claims (i.e. claims 9, 10, 22, 26 and 27 of the '171

patent; claims 1, 8, 9 and 10 of the '370 patent; and claims 1, 4, 7, 10 and 13 of the '988 patent)

were anticipated because the invention defined in those claims was described in a prior

publication, such as an article, book or another patent.  A patent claim is anticipated and invalid

if the entire invention defined by that claim was described in a printed publication either: (i)

before Tristrata made its invention; or (ii) more than one year before the effective filing date of

Tristrata's patent application.

For a printed publication to anticipate the claims of the '171, '370 or '988 patents, Mary

Kay must show that the printed publication, when read by a person of ordinary skill in the art,

embodies or discloses each limitation of Tristrata's claim.  The disclosure must be complete

enough to enable one of ordinary skill in the art to practice the invention, without undue

experimentation.  In determining whether the disclosure is enabling, you should take into account

what would have been within the knowledge of a person of ordinary skill in the art at the time,

and you may consider expert testimony and other publications that shed light on the knowledge

such a person would have had at that time.

29

## FINAL JURY INSTRUCTION NO. 3.9
### *Obviousness*

In order to be patentable, an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious to you as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

To determine obviousness or non-obviousness of the claimed subject matter of each of the patents in suit, you should take the following steps:

1. Determine the scope and content of the prior art relied upon by Mary Kay.

2. Identify the difference, if any, between each claim of the patents-in-suit and the prior art.

3. Determine the level of ordinary skill in the pertinent art at the time the invention of the patents-in-suit was made.

4. Consider objective factors of non-obviousness, which I will describe to you in detail later.

Against this background, you must then decide whether the claimed subject matter would have been either obvious or non-obvious to a person of ordinary skill in the pertinent art.

30

**FINAL JURY INSTRUCTION NO. 3.10**
*Scope and Content of the Prior Art*

In arriving at your decision on the issue of whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem the inventor faced. Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the named inventor was trying to solve. Prior art includes the following:

1. Patents, articles, books or any other type of printed publication publicly available before December 23, 1985;

2. Anything in public use or on sale in the United States before December 23, 1985; and

3. Anything that was publicly known or used by others in this country before the date of invention of the patents-in-suit.

31

## FINAL JURY INSTRUCTION NO. 3.11
### *Differences Over the Prior Art*

You must next consider the differences, if any, between the prior art and the claimed invention. Although it is proper for you to note any differences between the claimed invention and the prior art, you should not focus only on the differences, because the test is whether the claimed invention as a whole would have been obvious over all of the prior art. Each claim must be considered in its entirety.

## FINAL JURY INSTRUCTION NO. 3.12
### *Level of Ordinary Skill*

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made. Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventor, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventor, the sophistication of the technology, and the education of others working in the field.

33

### FINAL JURY INSTRUCTION NO. 3.13
#### *Motivation to Combine*

Once the prior art is assembled and considered, you should determine whether the prior art, considered as a whole, suggests the claimed invention. Prior art references may be combined to show obviousness if there is some motivation or suggestion to combine the references and if the combination would be reasonably likely to achieve the goal of the invention. Both the suggestion or motivation to combine and the expectation of success must be found in the prior art.

34

## FINAL JURY INSTRUCTION NO. 3.14
### *Obviousness - Hindsight*

The question of obviousness is simple to ask but difficult to answer. A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention. If you find the available prior art shows each of the limitations of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these limitations in the same manner as the claims in suit.

The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation. It is wrong to use the patent-in-suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit. Rather, you must cast your mind back to the time of the invention and consider only the thinking of one of ordinary skill in the art, guided only by the prior art and what was known in the field.

35

## FINAL JURY INSTRUCTION NO. 3.15
### *Objective Criteria Concerning Obviousness*

In making your decision as to the obviousness or non-obviousness of the claimed invention, you must consider the following objective evidence that may tend to show the non-obviousness of the claims at issue:

1. commercial success or lack of commercial success of products covered by the patents-in-suit;

2. a long-felt need in the art that was satisfied by the invention of the patents-in-suit;

3. the failure of others to make the invention;

4. copying of the invention by others in the field;

5. unexpected results achieved by the invention;

6. praise of the invention by the infringer or others in the field;

7. expressions of disbelief or skepticism by those skilled in the art upon learning of the invention;

8. the inventor proceeded in a direction contrary to the accepted wisdom of those skilled in the art; and

9. the taking of licenses under the patents by others.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue. For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those claimed

36

in the patent-in-suit, then any commercial success may have no relation to the issue of obviousness.

**FINAL JURY INSTRUCTION NO. 3.16**
*Obvious to Try*

The evidence might indicate to you that what the inventors did was obvious to try.  If so, this does not indicate the patent is invalid for obviousness.  "Obvious to try" is not the standard; rather, it is whether the invention as a whole would have been obvious to those of ordinary skill in the pertinent art at the time he or she made the invention.

## FINAL JURY INSTRUCTION NO. 4
### *Damages - Generally*

If, after considering all of the evidence and the law as I have stated it, you have determined either that: (i) no asserted claim is infringed by Mary Kay, or (ii) clear and convincing evidence shows that any infringed claim is invalid, then your verdict should be for Mary Kay and you need go no further in your deliberations.  If at least one asserted claim is infringed and is not invalid, you must then turn to the issue of damages.

**FINAL JURY INSTRUCTION NO. 4.1**
*Compensatory Damages in General*

Patent law provides that in the case of infringement of a valid patent claim, the owner of the patent shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer. Damages are compensation for all losses suffered as a result of the infringement.

It is not relevant to the question of damages whether Mary Kay benefited from, realized profits from, or even lost money as a result of the acts of infringement. It is also not relevant if Mary Kay did not foresee that it would cause Tristrata damage at the time that it infringed the asserted claims. The only issue is the amount necessary to adequately compensate Tristrata for Mary Kay's infringement. Adequate compensation should return Tristrata to the position it would have occupied had there been no infringement.

40

## FINAL JURY INSTRUCTION NO. 4.2
### *Burden of Proof*

Tristrata has the burden of proving damages by what is called a preponderance of the evidence. As you recall, that means that Tristrata has to produce evidence that, when considered in the light of all the facts, leads you to believe that what Tristrata claims is more likely true than not. To put it differently, if you were to put Tristrata's and Mary Kay's evidence concerning damages on the opposite sides of a scale, the evidence supporting Tristrata's claims would have to make the scales tip somewhat on its side. Tristrata is entitled to all damages that can be proven with reasonable certainty. On the one hand, reasonable certainty does not require proof of damages with mathematical precision. Mere difficulty in ascertaining damages is not fatal to Tristrata. On the other hand, Tristrata is not entitled to speculative damages; that is, you should not award any amount of loss that, although possible, is wholly remote or left to conjecture. You may base your evaluation of reasonable certainty on opinion evidence. Any doubts regarding the computation of the amount of damages should be resolved against Mary Kay and in favor of Tristrata.

41

**FINAL JURY INSTRUCTION NO. 4.3**
*Entire Market Value Rule*

The entire market value rule allows for the recovery of damages based on the value of an entire product containing several features, even though only one feature is patented, when the patented feature constitutes the basis for consumer demand for the product. The unpatented features or products must function together with the patented features or products in some manner so as to produce a desired end product or result, i.e. to constitute a functional unit. So, if you find that Tristrata has proven by a preponderance of the evidence that customers demanded the entire accused product because of the patented feature, you may award damages based on the value of the entire product. However, if you find that customer demand for the product is based on something other than the patented feature, you should award damages based on the value of the patented feature and not the value of the entire product.

**FINAL JURY INSTRUCTION NO. 4.4**
*Date Damages May Begin*

Because the '370 and '988 patents are directed to methods or processes, if you find Mary Kay infringed, Tristrata is entitled to recover damages for the entire period of time these patents were infringed.

For the '171 patent, the notice is in dispute, and it is up to you to determine the date on which Tristrata communicated to Mary Kay a charge of infringement. Notice is governed by the marking statute. Tristrata has proven compliance with the marking statute if you find that, under the totality of the circumstances, Tristrata gave actual notice of infringement to Mary Kay or that Tristrata made reasonable efforts to ensure that its licensees complied with the marking statute. According to the law of Patents, damages can not be awarded for activities beginning prior to February 23, 1995. Furthermore, the date Tristrata first gave notice to Mary Kay of its claim of patent infringement can be no later that February 23, 2001, the date of filing of this lawsuit.

43

**FINAL JURY INSTRUCTION NO. 4.5**
*Reasonable Royalty as a Measure of Damages*

A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

A reasonable royalty is the minimum permissible measure of damages set by patent law and is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall. Accordingly, you may find damages in excess of a reasonable royalty if you find that the facts so warrant, but you may not award less than a reasonable royalty.

A reasonable royalty is the amount of money that would be agreed to in a hypothetical arm's-length negotiation between Tristrata and Mary Kay, with both operating under the assumption that the negotiated patent is valid and would be infringed by the accused products.

The reasonable royalty must be calculated as of the point in time just prior to when infringement would begin, which in this case would be the 1993 time period.

In the hypothetical arm's-length negotiation, you must assume that both parties are willing participants. You must assume that the person negotiating on behalf of Mary Kay was willing to take a license and would have known that the asserted claims were valid, enforceable and infringed by Mary Kay. You must also assume that Tristrata would have been willing to grant a license. Finally, you must assume that both Tristrata and Mary Kay knew all pertinent information at the time of the hypothetical negotiations.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for Mary Kay's use of the patented invention, including the opinion testimony of experts.

44

**FINAL JURY INSTRUCTION NO. 4.6**
*Factors for Determining Reasonable Royalty*

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors:

1.    the royalties received by Tristrata for the licensing of others under the patent-in-suit;

2.    the rates paid by licensee for the use of other patents comparable to the patents-in-suit;

3.    the nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold;

4.    Tristrata's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.    the commercial relationship between Tristrata and Mary Kay, such as whether they are competitors in the same territory in the same line of business, or whether they are inventors or promoters;

6.    the effect of selling the patented specialty in promoting sales of other products of Mary Kay, the existing value of the invention to the Tristrata as a generator or sales of its nonpatented items, and the extent of such derivative or convoyed sales;

7.    the duration of the patents and the length of the licenses;

45

8.   the established profitability of the products made under the patents, its commercial success and its current popularity;

9.   the utility and advantages of Tristrata's patented inventions over the old modes or devices, if any, that had been used for working out similar results;

10.  the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Tristrata, and the benefits to those who have used the invention;

11.  the extent to which Mary Kay has made use of the invention, and any evidence that shows the value of that use;

12.  the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.  the portion of the realizable profit that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by Mary Kay;

14.  the opinion testimony of qualified experts; and

15.  any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

## FINAL JURY INSTRUCTION NO. 4.7
### *Interest*

None of the parties' calculations include interest. Therefore, in arriving at your damages calculation, you should not consider interest in any way because it is the function of the Court to award interest.

**FINAL JURY INSTRUCTION NO. 4.8**
*Closing Statement Damages*

The fact that I have instructed you regarding damages should not be construed as

suggesting which party is to prevail in this case.  Instructions regarding damages are given for

your guidance in the event that the evidence leads you to find in favor of Tristrata.  Finally, if you

find Tristrata is entitled to damages, you may not include or add to the award any sum for

purposes of punishing Mary Kay or to set an example.

48

## FINAL JURY INSTRUCTION NO. 5
### *Deliberations and Verdict - Introduction*

My instructions on the law are now finished. I will end by explaining how you will deliberate in the jury room and about your possible verdicts.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them and give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent through your foreperson, who by custom of this Court is juror No. 1.

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. Your votes should stay secret until you are finished.

49

**FINAL JURY INSTRUCTION NO. 5.1**
*Unanimous Verdict*

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, each juror must agree to the verdict.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  Talk with each other, listen carefully and respectfully to everyone's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.  But do not surrender your honest convictions as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges - judges of the facts, and, in the end, your vote must be exactly that - your own vote.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  What the verdict shall be is your sole and exclusive duty and responsibility.

50

## FINAL JURY INSTRUCTION NO. 5.2
### *Duty to Deliberate*

You are now free to talk about the case in the jury room.  In fact, it is your duty to consult with each other, to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement, if you can do so without violence to your individual judgment.  No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  You should feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

51

## FINAL JURY INSTRUCTION NO. 5.3
### *Court Has No Opinion*

Let me finish by repeating something that I said to you earlier.  Nothing that I have said or

done during this trial, nothing about my instructions, and nothing about the form of the verdict

was meant to convey what I think your verdict should be or to influence your decision in any

way.  You must decide the case yourselves based solely on the evidence presented.